[No. 15776. Department One.—April 15, 1895.]

# J. S. ROHRBOUGH, RESPONDENT, *v.* J. R. JOHNSON, APPELLANT.

CHATTEL MORTGAGE — HARVESTED CROP — COMMON-LAW MORTGAGE — CHANGE OF POSSESSION.—A valid statutory chattel mortgage cannot be made upon a harvested crop, but what is frequently called "a common-law chattel mortgage" may be taken upon any species of personal property, if followed by a delivery of the property to the mortgagee, and an actual and continued change of possession, as required by section 3440 of the Civil Code.

ID.—DELIVERY OF GOODS AS SECURITY—PLEDGE.—The delivery of goods to a creditor as security for a debt is not properly a common-law mortgage, nor is it a mortgage under the Civil Code, but it is properly denominated a pledge, yet the question whether the instrument be called a mortgage or a pledge does not affect its efficacy as a security where there is a sufficient delivery and change of possession.

ID.—CONSTRUCTION OF STATUTE OF FRAUDS—RULE AS TO CHANGE OF POSSESSION.—The construction fixed by the decisions of this court upon section 3440 of the Civil Code, which requires an immediate delivery and an actual and continued change of possession upon a sale of personal property, is equally applicable to chattel mortgages, other than those authorized by statute, and the same rule must apply in determining what is an immediate delivery and an actual and continued change of possession, viz., that these questions must be determined upon the facts of each particular case.

ID.—MORTGAGE GIVING RIGHT OF POSSESSION—DEBT NOT DUE—DELIVERY FROM BAILEE TO MORTGAGEE—ATTACHMENT.—Where the mortgage of a harvested crop provided that, if the mortgagee should deem himself insecure, he might take possession of the property, and sell it without' foreclosure, and the crop had been delivered by the mortgagor to a bailee for the purpose of being cured and made into bales, the bailee having knowledge of the mortgage, and having a lien upon the crop dependent upon possession for the value of his services in curing and baling the crop, the mortgagee may, as soon as the crop is dried and baled, pay to the bailee the amount of his charges, and lawfully take possession of the crop from him, and may maintain his right of possession as against an attaching creditor of the mortgagor, although the debt secured by the mortgage was not due.

ID.—LIEN OF BAILEE—SUBROGATION.—The mortgagee being compelled for his own security to discharge the lien of the bailee is subrogated to that lien as against an attaching creditor of the mortgagor, and may rightfully defend the possession of the crop by virtue of such subrogation.

ID.—EVIDENCE—AGENCY—POWER OF ATTORNEY.—Where a note and mortgage were given to the plaintiff through his agent, the note and mortgage, together with a power of attorney from the plaintiff to the agent, are properly admitted in evidence; and the power of attorney is the best evidence of the agency.

ID.—INADMISSIBLE EVIDENCE—INSTRUCTIONS OF MORTGAGOR AFTER DE-
LIVERY TO MORTGAGEE.—Instructions given by the mortgagor to a ware-
houseman concerning the crop after the mortgagee had taken possession
are not admissible in evidence, as they could not affect the mortgagee
who was rightfully in possession by express authority of the mortgagor.

APPEAL from a judgment of the Superior Court of
Mendocino County and from an order denying a new
trial.

The facts are stated in the opinion.

*T. L. Carothers*, for Appellant.

The property mortgaged in and by the chattel mort-
gage is not such property as can be mortgaged under
the provisions of section 2955 of the Civil Code, and
therefore the mortgage has no validity as to third parties.
(Jones on Chattel Mortgages, sec. 122; *Gassner* v. *Patter-
son*, 23 Cal. 299; *Stringer* v. *Davis*, 30 Cal. 318; *Glenn* v.
*Arnold*, 56 Cal. 631; *Dufficy* v. *Shields*, 63 Cal. 333; *In
re Fischer*, 94 Cal. 523; Cobbey on Chattel Mortgages.)
The statute having provided for chattel mortgages, the
rule of the common law as to such mortgages does not
apply.    (Civ. Code, secs. 14, 20.)

*J. H. Seawell*, for Respondent.

The mortgage was good between the parties. (*Tregear*
v. *Etiwanda Water Co.*, 76 Cal. 537; 9 Am. St. Rep. 245;
*Holbrook* v. *Baker*, 5 Me. 309; 17 Am. Dec. 236; *Bissell*
v. *Hopkins*, 3 Cow. 166; 15 Am. Dec. 259; *Bucklin* v.
*Thompson*, 1 J. J. Marsh. 223; *Letcher* v. *Norton*, 5 Ill.
575; *Homes* v. *Crane*, 2 Pick. 610.)    Before the right of
any creditor of the mortgagor attached Rohrbough took
possession.    Possession cures defects which make a
mortgage voidable merely.    (2 Cobbey on Chattel Mort-
gages, sec. 794; Jones on Chattel Mortgages, sec. 178.)
The provision in the mortgage allowing the mortgagee
to take possession of the mortgaged property gave the
mortgagee the right of possession at his pleasure. (*Gage*
v. *Wayland*, 67 Wis. 566; *Cline* v. *Libby*, 46 Wis. 123;

32 Am. Rep. 700; *Huebner* v. *Koebke*, 42 Wis. 319; Cobbey on Chattel Mortgages, sec. 858; Jones on Chattel Mortgages, sec. 431.)

HAYNES, C.—Action in claim and delivery for fifty bales of hops.

Judgment for the plaintiff was entered upon the findings, and defendant appeals from the judgment and from an order denying his motion for a new trial.

Joel Eveland, a hopgrower, removed and delivered his crop of 1893 to one Felix Purcell at his hop-house, to be by him dried and baled. On September 11, 1893, Eveland executed to the plaintiff his promissory note, payable eighty days after date, for the sum of twelve hundred dollars, which sum the plaintiff had advanced to Eveland to enable him to pay for picking the hops; and, to secure the payment thereof, Eveland also executed to the plaintiff an instrument purporting to be a chattel mortgage, in which the mortgaged property is described as " consisting of the whole of the said mortgagor's hop crop for the year 1893, and now being and lying in the hop-house of Felix Purcell, situated in Round Valley township, Mendocino county, California." Said mortgage also provided that, if the mortgagee should thereafter deem himself insecure, he might take possession of said property and sell the same in the manner provided by law, without foreclosure, and from the proceeds pay the whole amount due, as specified in the note and mortgage. This mortgage was recorded on the 13th.

When the hops were dried and baled plaintiff sent his teams to remove them, but Purcell refused to deliver them until his charges for curing and baling were paid. Plaintiff thereupon paid said charges, amounting to one hundred and eighty dollars and twenty-five cents, whereupon Purcell, who had been informed by Eveland that he had mortgaged the hops to plaintiff, delivered them, and they were thereupon placed upon plaintiff's wagons

and hauled to Ukiah, in the same county, where they arrived on October 2, 1893.

On September 30, 1893, one Marks commenced an action in the superior court of Mendocino county against said Eveland to recover the sum of eight hundred and seventy-nine dollars and fifty-three cents and interest, upon a promissory note made by Eveland in 1890, and procured a writ of attachment to be issued and placed in the hands of J. R. Johnson, the defendant in this action, who was then the sheriff of said county. Upon the arrival of the hops at Ukiah, and while upon plaintiff's wagons upon the street, the defendant, as such sheriff, seized the hops under said writ, and afterward sold them under the judgment procured by Marks in said action as the property of Eveland. Upon the refusal of the sheriff to surrender the hops to plaintiff, upon demand duly made, this action was brought.

Plaintiff had judgment for the return of the hops or for eleven hundred and seven dollars and seventy-five cents, the value thereof, in case a delivery could not be had.

Appellant contends that plaintiff's mortgage was void and conferred no right to the possession of the property, or to a lien thereon, because taken upon property not authorized to be mortgaged, citing section 2955 of the Civil Code.

It is conceded that a valid statutory mortgage could not be made upon the hops after they ceased to be a growing crop; but what is frequently called "a common-law chattel mortgage" may be taken upon any species of personal property, if it is accompanied by a delivery of the property to the mortgagee, and followed by such actual and continued change of possession as is required by section 3440 of the Civil Code; the difference being that, as to the property enumerated in section 2955 of the Civil Code, the due execution, acknowledgment, and recording of the chattel mortgage dispenses with a change of possession, and permits the property to remain in the hands of the mortgagor. The expression

"common-law mortgage" is not a happy one, and under the code is inaccurate. At common law a chattel mortgage amounted in effect to a conditional sale. By it the legal title to the goods passed to the mortgagee, subject to be divested upon performance of the condition. (See note to *Lucketts* v. *Townsend*, 49 Am. Dec. 731, and cases there cited.) The Civil Code, section 2920, defines a mortgage to be a contract by which specific property is hypothecated for the performance of an act, " without the necessity of a change of possession," and cannot be properly applied to a security dependent upon possession by the creditor, which the code denominates a pledge.

Section 2924, of the Civil Code is as follows: " Every transfer of an interest in property, other than in trust, made only as a security for the performance of another act, is to be deemed a mortgage except where in the case of personal property it is accompanied by an actual change of possession, in which case it is deemed a pledge."

Whether the instrument be called a mortgage or a pledge does not, however, affect its efficacy as a security.

The question, therefore, is whether there was such delivery to and possession by the plaintiff as is required by section 3440 of the Civil Code, which, so far as pertinent here, is as follows: " Every transfer of personal property, other than a thing in action, . . . . and every lien thereon, other than a mortgage, when allowed by law, . . . . is conclusively presumed, if made by a person having at the time the possession or control of the property, and not accompanied by an immediate delivery, and followed by an actual and continued change of possession of the things transferred, to be fraudulent, and therefore void, against those who are his creditors, while he remains in possession, and the successors in interest of such creditors, . . . . and against purchasers or encumbrancers in good faith subsequent to the transfer."

It has been repeatedly held that a sale of personal

property, not accompanied by an immediate delivery and an actual and continued change of possession, is fraudulent and void as to any creditor who was such during any of the time the property remained in the seller's possession, and that such property may be seized by such creditor in the hands of the buyer in the same manner as though there had been no attempted transfer by the debtor. (*Watson* v. *Rodgers*, 53 Cal. 401; *Edwards* v. *Sonoma Valley Bank*, 59 Cal. 148.) This construction of said section is equally applicable to chattel mortgages, other than those authorized by statute, and the same rule must apply in determining what is an immediate delivery and actual and continued change of possession, viz, that these questions must be determined upon the facts of each particular case. (*Claudius* v. *Aguirre*, 89 Cal. 503; *Byrnes* v. *Moore*, 93 Cal. 394.)

At the time this mortgage was made the hops were not in the possession of Eveland, but were in the possession of Purcell, a bailee; for the purpose of being cured and baled by Purcell, and his possession was actual and exclusive, for the purposes of the bailment, and he had a lien thereon, dependent also upon possession, for the value of his services in curing and baling them. *Actual* possession could not be delivered to the plaintiff by Eveland until the hops were dried and baled and Purcell's charges were paid, without the latter's consent. For aught that appears in the record the plaintiff took possession of the hops as soon as the bailee's work was accomplished, and certainly as soon as his lien was discharged, and such actual possession could not have been had without payment of his charges. The plaintiff sent his wagons for the hops, and Purcell refused to deliver them without payment, and thereupon plaintiff satisfied his lien and immediately took them into his actual possession. Neither Eveland, the owner, nor the defendant as sheriff, with his writ of attachment, could have obtained possession

of the hops without first discharging the lien of the bailee.

The contention that the plaintiff did not rightfully obtain possession because the debt secured by the mortgage was not due is without merit. He was expressly authorized under the terms of the mortgage to take possession at any time he deemed himself insecure, and as his security depended upon possession, no question as to the construction of that condition in the mortgage can arise. Purcell testified that Eveland informed him of the mortgage; hence no question is made as to his right to deliver the hops to the plaintiff, and the plaintiff, being thus compelled for his own security to discharge the prior lien of Purcell, became subrogated to his lien as against the attachment, and upon this ground also he was rightfully in possession of the hops at the time they were attached.

The evidence sustains the findings, and no question is made as to the sufficiency of the findings to support the judgment.

The note and mortgage and the power of attorney from the plaintiff to White were properly admitted in evidence. White transacted the business for the plaintiff, and the power of attorney was the best evidence of his agency.

Nor did the court err in sustaining plaintiff's objections to the questions put to Eveland by the defendant as to instructions sent by the witness to the warehouseman at Ukiah concerning the hops after plaintiff had taken possession. Such instructions, whatever they were, could not affect the plaintiff who was rightfully in possession by his express authority.

The judgment and order appealed from should be affirmed.

BELCHER, C., and BRITT, C., concurred.

For the reasons given in the foregoing opinion the judgment and order appealed from are affirmed.

HARRISON, J., VAN FLEET, J., GAROUTTE, J.