## In re RICKETTS.

### McKEY v. PINCKARD.

(Circuit Court of Appeals, Seventh Circuit. April 18, 1916. Rehearing Denied.)

### No. 2267.

1. EXCHANGE OF PROPERTY ⬤⟹10—CONSTRUCTIVE DELIVERY.

Where claimant's husband, who had many transactions with the bankrupt, a dealer in pictures, exchanged, for the benefit of claimant, pictures belonging to her for other pictures, and the exchange was noted in the bankrupt's books, and a receipt for consignment of the new pictures for sale on commission was executed, but possession was not taken, and nothing was done to make the change in ownership manifest to the public or to any part thereof, there was no constructive delivery of the new pictures to claimant.

[Ed. Note.—For other cases, see Exchange of Property, Cent. Dig. §§ 19, 21, 22, 24; Dec. Dig. ⬤⟹10.]

2. FRAUDULENT CONVEYANCES ⬤⟹139—DELIVERY—NECESSITY.

A delivery of chattels is necessary in Illinois to pass title to the buyer, except in the case of judicial sale, or where the bill of sale may by law be recorded, and where there is no delivery of the chattels, and possession is not taken by the buyer, the sale is fraudulent as to creditors of the seller.

[Ed. Note.—For other cases, see Fraudulent Conveyances, Cent. Dig. §§ 439-442; Dec. Dig. ⬤⟹139.]

---

⬤⟹For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

3. FRAUDULENT CONVEYANCES ⊂⊃138—EXCHANGE—DELIVERY—NECESSITY.

Where there is a sale of chattels by way of exchange, delivery is just as essential to pass title as if the transaction were one of sale for money consideration.

[Ed. Note.—For other cases, see Fraudulent Conveyances, Cent. Dig. §§ 438, 443, 448–452; Dec. Dig. ⊂⊃138.]

4. FRAUDULENT CONVEYANCES ⊂⊃165—RIGHTS OF SELLER'S CREDITORS—DELIVERY.

While the right of a defrauded vendor is superior to that of the fraudulent vendee's execution creditor, delivery is essential to pass title to the buyer, and if there be no delivery, and the buyer does not take possession, in Illinois, the sale is, regardless of the buyer's good faith, deemed fraudulent in law, and the buyer, because of his legal fraud, cannot assert his title as against execution creditors of the seller.

[Ed. Note.—For other cases, see Fraudulent Conveyances, Cent. Dig. §§ 494, 518; Dec. Dig. ⊂⊃165.]

5. BANKRUPTCY ⊂⊃185—TRUSTEE—RIGHTS.

Under Bankr. Act, § 47a,† the trustee has the rights of an execution creditor of the bankrupt, and as such may assert such rights as against one who bought chattels from the bankrupt, but never received possession; there being no delivery.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 234, 235, 273; Dec. Dig. ⊂⊃185.]

6. COURTS ⊂⊃372(4)—FEDERAL COURTS—STATE RULES.

In determining whether a sale has been consummated, the federal courts will follow the state rules.

[Ed. Note.—For other cases, see Courts, Cent. Dig. § 979; Dec. Dig. ⊂⊃ 372(4).]

Appeal from the District Court of the United States for the Eastern Division of the Northern District of Illinois.

In the matter of the bankruptcy of Robb R. Ricketts, doing business as Moulton & Ricketts. Claim by Mary L. Pinckard, opposed by Frank M. McKey, trustee in bankruptcy of the estate of the bankrupt. From a decree for claimant, the trustee appeals. Reversed and remanded.

Clarence J. Silber, of Chicago, Ill., for appellant.

James Rosenthal, of Chicago, Ill., for appellee.

Before KOHLSAAT, MACK, and ALSCHULER, Circuit Judges.

MACK, Circuit Judge. Husband of appellee, a physician, had for several years invested and dealt in pictures, through the bankrupt. The plan followed was substantially this: Ricketts, either as owner or as agent for other dealers, would sell to Pinckard. Sometimes the pictures thus bought would be taken to his home or office, there hung, and at a later date returned to Ricketts, as agent to sell. Often, however, they would not be taken away from Ricketts' store. At times they were not even seen by Pinckard, but purchased by name or description. Frequently he had seen, known of, or even owned such pictures at an earlier time. Sometimes a lot of pictures then owned, or supposed to be owned, by Pinckard, would be exchanged for others that Ricketts had on hand. Whether so returned to Ricketts, or not taken away, but left with him, the pictures were to be sold by Ricketts for Pinckard at not less than the purchase price with 6 per cent. in-

terest from the date of Pinckard's investment. Any excess above this price was to be shared by the parties.

When and how an accounting was to be made, does not seem to have been determined by the parties. A receipt was given by Ricketts for each picture so left with him to be sold, irrespective of whether Pinckard's ownership was through a sale or an exchange, in the following form:

(Name of Artist.) (Date.) Received on consignment from Dr. C. P. Pinckard one oil painting, size (specified), subject (......), by (name of artist), (style of frame). Value ($......).

[Signed] Moulton & Ricketts, by (Name of Employé).

In the case of an exchange, however, the receipt would be dated back to the time of the original purchase of the picture given by Pinckard in exchange, so that the 6 per cent. interest would be calculated from that date, and if the transaction involved a number of pictures, as in the case now before us, the time would be averaged.

Pursuant to this plan, Ricketts had sold to and received back from Pinckard in 1913, 12 pictures, valued at $40,000. Pinckard then donated them to his wife and proper entries showing the transfer were made in Ricketts' books. In January, 1914, Pinckard, acting for his wife accepted Ricketts' proposition to exchange the 12 for 41 other pictures of the same value. New receipts were executed to Mary L. Pinckard, and were dated back in accordance with the practice as above described. A "value" price was placed on each picture. In fact, the 12 pictures had theretofore been sold by Ricketts, and no account of the sale rendered to Pinckard, so that the actual transaction, while not so intended, was a sale, and not an exchange.

Bankruptcy proceedings were instituted against Ricketts on March 6, 1914, and the receiver came into immediate possession of 36 out of the 41 pictures. The other 5 were in the hands of prospective customers. This is an appeal from the order of the District Court confirming the order of the referee granting the prayer of appellee's reclamation petition as to the 36 pictures.

1. No question of rescission for fraud is raised; inasmuch as the proceeds of the sale of the 12 pictures are not traceable, such a proceeding, if maintainable, would be fruitless.

[1] 2. The referee found, and his uncontested findings are fully supported by the evidence, that:

"Said pictures were never removed at any time, after said sale [by Ricketts to Mrs. Pinckard] from the premises of said bankrupt; that they were not separated from said bankrupt's stock of pictures owned by him, but were left with said bankrupt by said petitioner, under the same physical conditions as before said sale to said petitioner, and said consignment back to said bankrupt, and that no delivery thereof was made by said bankrupt to said petitioner other than as herein found; that no actual possession of said 41 pictures, nor any of them, was ever taken by said petitioner, but all of them remained with said bankrupt, until the 6th day of March, A. D. 1914, on which day the Chicago Title & Trust Company, as receiver in bankruptcy of said bankrupt estate, took possession of said pictures, as part of the assets of said bankrupt estate, excepting only the following, which were not then in possession of said bankrupt," specifying 5 of them; "that said pictures and all of them were capable of actual manual delivery, to said petitioner; that there was no actual or manual delivery or change of possession."

From the findings he deduced the conclusion that:

"The facts as herein found constitute a constructive delivery of said pictures by said bankrupt to said petitioner, and that the title to said pictures is in the petitioner, and that the petitioner as against said respondent trustee, is entitled to possession thereof as prayed for in said petition."

We cannot concur in this conclusion. No fact, either found by the referee or testified to by any witness, furnishes the slightest basis for holding that there was a constructive delivery. The pictures were in Ricketts' store; some of them were hanging on the walls. Pinckard not only did not take actual possession of them; he did not even see them at the time. He knew them; he had theretofore owned some of them; but neither of the parties did anything to the pictures as a result of or pursuant to the sale, or in any manner made manifest to the public, or to any part thereof, the change in the ownership.

Constructive delivery can be effected by a turning over of the possession of the premises, or of the key thereto, or, in case of property incapable of manual delivery, by a delivery of a symbol or a document of title. A separation of the articles themselves from others not sold, and a proper marking thereof, or of the place into which they are put, even a segregation without physical separation, as by marking them with the vendee's name (In re Pease Car & Locomotive Works [D. C.] 134 Fed. 919), may amount to either a constructive or an actual delivery according to the circumstances.

[2] But the entry of the sale in the vendor's books and the execution by him of a trust or consignment receipt, though evidencing a sale and a bailment back, valid inter partes, in no sense amounts to a delivery, either actual or constructive. And delivery of chattels is essential in Illinois to pass title, or to create a lien as against execution or attaching creditors, except only when dispensed with by reason of the publicity of the transaction, as in the case of a judicial sale, or the authorized recording of the document which permits retention of possession by the grantor. That this is and has been the law of Illinois from the earliest times, irrespective of the utmost good faith of the parties, is too well settled to require citation of authorities. Many cases will be found in Williston, Sales, §§ 366, 350.

It has often been urged that delivery would be a useless form, and therefore should not be insisted upon, when the vendee in good faith desires to lend the chattels so purchased to the vendor. But the answer has been uniform: Delivery is not an idle form; it has a definite purpose, to give publicity to the transaction. It must therefore be followed by such continuous possession on the part of the vendee, or by such other open acts, as will evidence to those who may be interested, that there has been a conveyance. Only if it can be found as the Supreme Court, reversing the trial judge, found in Cunningham v. Hamilton, 25 Ill. 228, that the chattel had been in the possession of the vendee "long enough to apprise all parties of the change of ownership," would a sale, followed by a loan to the vendor (in that case after two or three days' possession), be upheld as against the vendor's creditors, levying on the property while in his possession pursuant to the loan.

There was nothing whatever in this case to prevent Pinckard from

taking physical possession of these pictures, having them sent to his home or his office, and subsequently turning them back to Ricketts as selling agent; or, if he preferred, he could have indicated clearly his wife's ownership and Ricketts' agency on each picture without removing or even separating them. By such actual or constructive delivery he would have given at least some publicity to the transaction sufficient, ordinarily, to sustain it. Instead of this, he avoided any publicity whatsoever. His entire good faith cannot help him, for in Illinois, as in most of the states, a transfer without delivery is deemed fraudulent in law as against creditors who shall acquire a lien on the property; fraud in fact is unnecessary.

[3] That Pinckard intended an exchange, not a sale, is immaterial so far as the necessity of delivery is concerned. Whether the 41 pictures were exchanged for the twelve pictures or sold for their money proceeds, delivery was equally essential to complete the transfer as against creditors.

[4] It follows that, even though, as between the parties, Ricketts had no title on March 6, 1914, yet, as the sale to Pinckard was fraudulent in law, Ricketts' execution creditor could have levied on the property on that day. While the right of a defrauded vendor is superior to that of the fraudulent vendee's execution creditor (In re Gold, 210 Fed. 410, 127 C. C. A. 142), the right of a vendee who, however honest in fact, is deemed guilty of fraud in law as against his vendor's creditors, by leaving the purchased chattels uninterruptedly in the vendor's possession, is subordinated to that of the vendor's execution creditor. Van Duzor v. Allen, 90 Ill. 499; In re Richheimer, 221 Fed. 16, 27, 136 C. C. A. 542.

[5, 6] That the trustee in bankruptcy has the rights of such an execution creditor (Bankruptcy Act, § 47a), and that the federal courts will follow the state court rule (In re Richheimer, supra, 221 Fed. at page 24, 136 C. C. A. 542), is conceded. Irrespective, therefore, of the relation between the parties established by the verbal arrangement for a sharing of possible profits in case of sale and the execution of the consignment receipts, appellee's rights as owner cannot be asserted as against the lien acquired by the trustee in bankruptcy.

The decree must be reversed, and the cause remanded, with directions to dismiss the reclamation petition, but without prejudice to the petitioner's right to file her claim as a creditor.