A. F. BARBER, Trustee, Appellee, v. IDA L. WIEMER, Trustee, et al., Appellants.

WITNESSES: Competency—Transaction with Deceased—Assignees by Operation of Law. The statutory declaration (Sec. 4604, Code, 1897,) that a party to an action is not a competent witness to detail personal transactions and communications against an assignee of a deceased person, does not apply when the assignee is such *by operation of law only.* So held where the assignee was a trustee in bankruptcy.

BANKRUPTCY: Trustees—Appointment and Qualification—Effect. Principle recognized that a trustee in bankruptcy is the representative of the *creditors,* and not of the bankrupt, even though the trustee does take over the title to the property of the bankrupt.

BANKRUPTCY: Trustees—Remedies—Transactions with Deceased. A trustee in bankruptcy, in an action to enforce an alleged trust in favor of the bankrupt, may not have the same right to exclude evidence of personal transactions with a deceased grantor as the bankrupt would have, were he prosecuting the action. (See Sec. 4604, Code, 1897.)

WITNESSES: Competency—Transactions with Deceased—Trustee in Bankruptcy as "Assignee." A trustee in bankruptcy, in an action to enforce a trust in favor of the bankrupt, which trust, it is alleged, was granted to defendant by one now deceased, is not an "assignee" of the deceased grantor, either in *fact* or by *operation of law;* and therefore the defendant, who denies the trust, is a competent witness to testify against said trustee as to personal transactions with said deceased.

**DEEDS:** Requisites and Validity—Parol. A parol gift of real estate, where the donee takes possession thereunder and improves the land as his own, will be sustained.

**ADVERSE POSSESSION:** Nature and Requisites—Character and Elements. One who enters into possession of real estate under a parol gift, and for ten years retains open, notorious, continued, and undisputed possession, under an asserted claim of absolute ownership, acquires an absolute title.

**DEEDS:** Conditions and Restrictions—Validity. One who is, in fact, the absolute owner of real estate under an executed parol gift, is none the less so because of the subsequent execution by the donor of a deed to donee, containing trust provisions to which donee did not consent.

*Appeal from Crawford District Court.*—E. G. ALBERT, Judge.

DECEMBER 11, 1917.

REHEARING DENIED MARCH 15, 1918.

PLAINTIFF, as trustee in bankruptcy of the estate of Frank and Henry Wiemer, bankrupts, instituted this action in equity, June 23, 1914, to terminate a trust and to recover said bankrupts' alleged equitable interest in 160 acres of land, asking for an accounting against Ida L. Wiemer, trustee, for said bankrupts' share of the rents and profits of the lands. Defendants Frank and Henry were adjudged bankrupts in May, 1914, and were discharged in October, 1915. The trial court found for plaintiff; denied reformation of the deed; and found that, under the deed and the evidence, there was a trust, as alleged by plaintiff, and that the two bankrupts were beneficiaries; terminated the trust; and found that the two bankrupts had an interest in the land which should go to the plaintiff, because of the bankruptcy proceedings; also required the defendant Ida L. Wiemer, as trustee, to account. A judgment and decree were entered accordingly. Defendants appeal.—*Reversed and remanded.*

*Shull, Gill, Sammis & Stilwill,* for appellants.

*Conners & Powers,* and *Harding & Kahler,* for appellee.

STEVENS, J.—I.   Plaintiff alleges substantially that, on November 7, 1895, one Sophia Lambach, being then the owner in fee simple, conveyed by trust deed to defendant Ida L. Wiemer, as trustee, for the use and benefit of herself and children, including said bankrupt defendants, 160 acres of land in Crawford County, Iowa, a particular description of which is given in the pleadings; that said two bankrupts, under and by virtue of said deed, were the equitable owners of an undivided 26/60 interest in said land; that, by operation of law, plaintiff, as trustee in bankruptcy, succeeded to and became vested with the interest of said bankrupts in said property; that the legal title is still in the name of said defendant Ida L. Wiemer, trustee, and, in violation of the terms of her said trust and said conveyance, she has repudiated said trust by claiming to be the absolute owner of said property; and further, that said defendant Ida L. Wiemer, trustee, one of the beneficiaries in the trust deed, is now in possession of said real property, claiming to be the absolute owner thereof, and denying that any of her codefendant beneficiaries, including said bankrupt defendants, or plaintiff, as their representative, have any right therein by virtue of said trust deed or otherwise; that said claims and repudiation of said trust have been called to the knowledge of plaintiff and all other defendants; and that said defendants have united with their codefendant, Ida, and have acquiesced in said claims so made by her and disclaimed any interest in said trust property and have also repudiated said trust; that said trust is no longer active, and no purpose could be subserved by its continuance; that plaintiff's interest in said trust property will no longer be preserved by such continuance, but would be defeated thereby; that the trust should be terminated by decree of

court and the trust enforced: and accounting is asked, and general equitable relief.   The trust deed is as follows:

"Know all men by these presents:   That Sophia Lambach, widow, of Crawford County, state of Iowa, in consideration of the sum of love and affection and one dollar, in hand paid by Ida L. Wiemer, trustee, of Crawford County, and state of Iowa, do hereby quitclaim unto the said Ida L. Wiemer, trustee, and to her heirs and assigns, the following described premises, situated in the county of Crawford, state of Iowa, to wit:   The west one hundred and sixty (160) acres of east half of Section twenty-three (23) in Township eighty-three (83) North, Range forty-one (41), West of the 5th P. M.   The said premises are not to be incumbered in any manner and are to be held in trust for the benefit of trustee's children and herself.   The profits derived from said premises to be used for benefit of grantee and her children.   In case the said grantee considers it best she may sell said land and reinvest the proceeds for the purpose above described.   After her death the said premises become the property of the said grantee's children, and the grantor aforesaid hereby relinquishes all contingent rights, including right of dower and homestead which she has in and to the aforesaid described premises.

"Dated this 7th day of November, 1895.

"Sophia Lambach.

"Duly acknowledged and recorded November 8, 1895."

The defendants answer by general denial, and all except Ida L. Wiemer disclaim any interest in the property. In addition to this, the defendant Ida L. Wiemer, and Ida L. Wiemer designated trustee, for separate answer admits that she is the mother of Fred, Mary, Henry, and Frank Wiemer, and Lula Wiemer Calhoun, and that Sophia Lambach executed and delivered the deed before set out; denies that plaintiff has any right, title, or interest to the premises described, or to any part of the income or profits she

may have received therefrom; that, in executing said deed, said Sophia intended that said property should belong to her, the said Ida, in fee, and that the word "trustee" was inserted by said grantor through mistake, and through a misapprehension of its legal effect; that the grantor inserted these words in said deed, to wit, "The said premises are not to be encumbered in any manner, and are to be held in trust for the benefit of trustee's children and herself," in order that the husband of said Ida should not receive or acquire any interest in said property; and that grantor did not intend to create a trust estate; that the grantor, by placing these words in the deed, to wit: "The profits derived from said premises to be used for benefit of grantee and her children. In case the said grantee considers it best she may sell said land and reinvest proceeds for the purpose above described. After her death the said premises becomes the property of the said grantee's children"—did not intend to limit or restrict the estate which she had before granted to said Ida; and that said deed should be reformed by the court to carry out the intentions of the grantor. Said defendant Ida further alleged that she is the absolute and unqualified owner in fee of the property described and the income and profits thereof; that she has been in actual possession of said property for more than ten years prior to the bankruptcy proceedings, and has held the same as the absolute owner thereof in fee; that her said possession has been open, notorious, and adverse to all the other defendants; and that she had always claimed that she was the absolute owner in fee thereof; and that she was in possession of the same as such owner, holding the property free and clear from any and all claims which each and every one of the defendants might claim to have therein. She prays that plaintiff's petition be dismissed, and that the deed before referred to may be reformed, and for general equitable relief. These affirmative allegations are de-

nied in plaintiff's reply, and plaintiff alleged further that said Ida was present at the execution of the trust deed, had personal knowledge that it was executed to her in trust; that she accepted the trust, and, having consented thereto and acquiesced therein, she is estopped from denying the validity of said trust or the validity of said trust estate against any beneficiary, and is estopped from denying the title and estate of plaintiff; that said transaction was voluntary, and intended as a gift from Sophia Lambach for the benefit of defendant Ida and her children; and that because thereof a court of equity will not reform the instrument.

All the defendants mentioned in the petition are still living. The bankrupts, Henry and Frank, did not list the real estate as assets in the bankruptcy proceedings. Defendant Lula Wiemer Calhoun, wife of D. J. Calhoun, the youngest of the children, was born to defendant Ida after the execution of the deed before referred to. A son was born to her, prior to the execution of the deed, who died in 1897. Prior to the commencement of this suit, notice was served on defendant Ida for an accounting, and a demand for the rents and profits since the execution of the deed. The husband of Ida died before this suit was brought. It was admitted that there are not sufficient funds of the bankrupts in the hands of the trustee to pay claims filed and allowed, unless the trustee is allowed to hold their interest, if any, in the land. There was evidence as to the value of the land itself, and its rental value. There were no buildings on the land in controversy. The defendant Ida lived on an adjoining 160 acres, which had been given her before by her mother, or she had taken as a part of her father's estate. It is claimed by defendant Ida that her mother, by a parol gift, gave her the land in controversy in 1881, and that she occupied it thereafter, and that her mother, at different times, promised to give her a deed,

which she finally did in 1895, as before stated; and her claim is that she so occupied under claim of right, and that, therefore, she had a fee title independently of the deed. Plaintiff's answer to this is that any talk of that kind was but a part of the transaction of the execution of the deed, which followed later; that, as trustee, she could not claim title as against the beneficiaries; that she is incompetent to testify to such a parol gift, under Section 4604 of the Code; and that, even though her testimony is competent, and to be considered, she has not established such claim by that clear and satisfactory and convincing evidence required in such cases. Proper objection was made to her competency as a witness, and to her evidence. The testimony introduced on behalf of the defendants, stated as briefly as may be, and substantially as they claim it to be in argument, is that Ida L. Wiemer was married, and lived near Davenport, prior to coming to Crawford County, in 1881; that her mother gave her this property, and that she, Ida, was to come from Davenport, and go out on the farm in Crawford County, and that she and her husband did so in 1881; that, since that time, she has paid all taxes on the land; that her mother did not give her a deed until 1895, although she promised it to her; and that she, Ida, used the property as her own; that she, Ida, broke and farmed the land from 1881 on; that her mother never made any claim to the real estate in question since 1881; that her father died prior to 1881; that she, Ida, was in possession of this real estate, claiming to be the owner of it; that she spent money in improving the farm, putting up fences, and seeding it down; that the farm was in poor condition when she first went on it; that she used the money and income from the place in taking care of herself and family and improving the property; that she came out here at the request of her mother, on the promise of her mother to give her this land; that her mother gave her the land; that all the business in reference to the farm was

transacted by her in her own name.    In regard to the execution of the deed in 1895, Ida testified:

"She [her mother] went and made out the deed and sent the deed and put it on record.  I was present at the time the deed was made out.  At the time of the transaction, she said that it was my property, and that she made it that way because Mr. Wiemer [Ida's husband] was speculating and didn't wish him to get hold of the property.  I handled the property just the same after the deed was made out; never kept any account concerning the credits or income; didn't examine the deed after it was prepared.  No one, from the time I took possession in 1881 until this controversy, ever made claim to the real estate against me.  Never knew the word 'trustee' was in the deed until this controversy came up.  The deed was not delivered to me at the time it was made out.  Mother caused the deed to be executed and placed on record.  Neither Frank nor Henry at any time ever made any claim to this land or any interest in it."

She further testified that her mother wanted her to have this property so that Mr. Wiemer could not use it in speculation.  It seems that the deed was left in a box in the bank, with Ida's papers.

Witness Frank Wiemer testified that his mother always claimed this property as her own, and that he never made any claim to any interest in it; never heard anyone else claim any interest; at the time of the trial, he was twenty-nine years of age.

Henry Wiemer testified to a conversation that he heard when he was ten years of age, between his mother and grandmother, in which the grandmother said that the reason she gave this property to Ida, her daughter, was because she gave a brother his college education, and property from the estate; and that this was to be his mother's,—he thinks he heard them more than once.  He also puts it this way:

"She said that my mother's brothers always got so much

property from the estate, and that was to be hers, my mother's."

On cross-examination, he says a boy cannot tell or remember all that he heard, only can tell a little of it,—some things are pretty plain; that he gave the conversation the best he could remember; that it was not an impression.

1. WITNESSES: competency: transaction with deceased assignees by operation of law.

Sophia Lambach was deceased at the time of the trial of this case. Appellant, however, testified, as a witness in her own behalf, to the transactions and conversations which she claimed to have had with her mother relative to the alleged gift to her of the land in controversy. Counsel for appellee contend that she was incompetent, under Section 4604 of the Code, to testify thereto. Counsel also assume that the plaintiff, trustee, in all respects stands in the place of the bankrupts, and that any objection to the competency of appellant as a witness that could have been urged by said bankrupts in a suit between her and the bankrupts, growing out of said transactions or communications, was available to plaintiff. It may be conceded that appellant would be incompetent to testify to personal transactions or communications with her deceased mother in a suit between herself and her sons, involving a controversy over the subject-matter of the quitclaim deed, and that the said bankrupts, within the meaning of the statute, were assignees of Sophia Lambach.

2. BANKRUPTCY: trustees: appointment and qualification: effect.

Under Section 70-a of the Bankruptcy Act, title to the property of a bankrupt vests in the trustee, by operation of law; after he has been appointed and qualified, as of the date of the adjudication thereof. *Simpson v. Miller,* 7 Cal. App. 248 (94 Pac. 252) ; *Fourth St. Nat. Bank v. Millbourne Mills Co.'s Trustee,* 172 Fed. 177; *Johnson v. Collier,* 222 U. S. 538.

The trustee is the agent of the court
3. BANKRUPTCY: to liquidate the assets of the bankrupt, to
trustees: reme-
dies: transac- protect the same and bring them before the
tions with
deceased. court for final distribution. He is not the
representative of the bankrupt, but of the
creditors, and holds the legal title to the property as the rep-
resentative of the creditors, and not of the bankrupt. *In re
Ducker,* 134 Fed. 43; *Devries v. Orem,* 104 Md. 648 (65 Atl.
430); *Carney v. Averill,* 110 Me. 172 (85 Atl. 494); *In re
Kreuger,* 196 Fed. 705; *In re V. & M. Lbr. Co.,* 182 Fed. 231;
*Merchants Nat. Bk. v. Sexton,* 228 U. S. 634; *Mueller v. Nu-
gent,* 184 U. S. 1; *In re Baum,* 169 Fed. 410; *In re Wilka,* 131
Fed. 1004; *Edwards v. Schillinger,* 245 Ill. 231 (91 N. E.
1048); *Starr v. Whitcomb,* 150 Mich. 491 (114 N. W. 345).

Plaintiff, however, as trustee in bankruptcy, is not the
assignee of deceased assignor of said bankrupts, but, at most,
is the assignee by operation of law of an assignee of said de-
ceased assignor's or grantor's. The word "assignee," as em-
ployed in Section 4604 of the Code, must be given its usual
and ordinary meaning.

The Supreme Court of Kansas, in *Burlington Nat.
Bank v. Beard,* 55 Kan. 773 (42 Pac. 320), construing the
following statute: "No party shall be allowed to testify in
his own behalf, in respect to any transaction or communica-
tion had personally by such party with a deceased person,
when the adverse party is the executor, administrator, heir
at law, next of kin, surviving partner, or assignee, of such·
deceased person"—in a case in which the question was
whether a sheriff, who had levied a writ of attachment upon
chattels, and the attachment creditors were assignees, within
the meaning of the above statute, said:

"We think that the common acceptation of the word
'assignee' is limited to an assignee in fact, and does not com-
prehend an assignee by mere operation of law. If it had
been intended by the legislature to include the latter sense,

it would scarcely have been necessary to use the words 'executor, administrator, heir at law, next of kin,' or 'surviving partner;' for the word 'assignee' would be broad enough to embrace them all, and therefore the word 'assignee' was used in its more limited sense, of an assignee in fact. It would be regarded as a strained construction of the word to extend it to a sheriff, or the creditors whom he represents, by reason of the levy of an attachment upon the property of a defendant."

The Supreme Court of Arkansas, in *Tucker v. West,* 31 Ark. 643, held that a statute of that state which required every plaintiff suing as an assignee to give security for costs, did not apply to executors or administrators. As throwing some light upon the question in this case, see *Page v. Johnston,* 23 Wis. 295; *Tremper v. Conklin,* 44 N. Y. 58.

In all controversies between a bankrupt and his creditor, his relation with the trustee is one of hostility. In this case, the bankrupts are joined with their mother as defendants, and testified as witnesses in her behalf. The prohibition of the statute does not extend to an assignee by operation of law of a deceased person; but refers to an action where a party thereto, or some person interested in the event thereof, or some person through or under whom such party to the action or interested person derives some interest, is called as a witness against the "assignee" of such deceased person,—that is, an assignee as the word is usually and commonly used and understood, and not otherwise.

It follows that, even though plaintiff be the assignee of the bankrupt by operation of law, he is not an assignee as that term is used in Section 4604; and appellant was not incompetent thereunder to testify to the conversations and transactions referred to in her testimony.

Under the Bankruptcy Law, title to all
property of the bankrupt, together with, the
right to maintain any necessary action in re-
lation thereto for the benefit of the creditors
of said bankrupts that could have otherwise
been prosecuted in the name and on behalf of the bankrupt,
may be maintained by the trustee in bankruptcy.   Chapter
27, Remington on Bankruptcy, and cases therein cited.
Suits brought by a trustee in bankruptcy in a state court
will be tried the same as other actions, and according to
the rules of evidence prevailing in the state court where
same is tried.   Whether appellant was a competent witness
to testify to personal transactions or communications with
her deceased donor or grantor depends entirely upon
whether plaintiff is an assignee in fact of such deceased
person, within the terms of Section 4604.

Plaintiff was not the assignee of deceased either by
operation of law or in fact, and appellant was a competent
witness under the statute to testify in her own behalf.

II. Appellant claims title to the real
estate in controversy (a) under a parol gift
from her mother in 1881, and (b) by adverse
possession for more than ten years under a
claim of right.   It has been repeatedly held
by this court that a parol gift of real estate, where the donee
enters into possession thereunder and improves the land as
his own, will be sustained.   *Bevington v. Bevington,* 133
Iowa 351; *Sires v. Melvin,* 135 Iowa 460; *Farlow v. Farlow,*
154 Iowa 647.   Also, that adverse possession of real estate
under claim of right for ten years will ripen
into an absolute title.   *Hamilton v. Wright,*
30 Iowa 480; *Sires v. Melvin,* supra; *Wilbur
v. Cedar Rapids & M. R. R. Co.,* 116 Iowa 65;
*Walsh v. Doran,* 145 Iowa 110; *Wilson v.
Beck,* 160 Iowa 276; *Boynton v. Salinger,* 147 Iowa 537;
*Goulding v. Shonquist,* 159 Iowa 647.

4. WITNESSES:
competency:
transactions
with deceased:
trustee in
bankruptcy as
"assignee."

5. DEEDS: req-
uisites and
validity: parol.

6. ADVERSE
POSSESSION:
nature and
requisites:
character and
elements.

Appellant testified that her mother gave her the land in controversy in 1881; that she immediately moved thereon, and has continuously been in possession thereof, by herself or tenants, claiming to be the absolute owner thereof under said gift and claim of right since that time; that she broke the sod, fenced the land, placed some other improvements thereon, paid the taxes, and has occupied, used, and controlled said real estate as her own, during all of said time; that her mother repeatedly promised to execute a deed conveying said premises to her, and in 1895, the quit-claim deed before referred to was executed and forwarded by her for record, and thereafter placed in the bank at Charter Oak with other papers of appellant. It is not claimed that appellant paid a consideration for said conveyance, but it is argued by counsel for appellee that appellant accepted and claims title under said instrument, and is bound by all the terms and limitations therein contained.

Appellant testified that she did not know that the word "trustee" was in the instrument, until after the present controversy arose; that she continued in possession and control of said real estate, receiving and using the income for herself, the same after the execution of said deed as before.

Appellee testified that defendant applied to him for a loan upon her real estate, and that, upon examination of the title, he found that she held the same in trust for herself and children; that the instrument contained a provision prohibiting her from encumbering same; that he called her attention to the instrument; and that she replied that she had forgotten that she held it in trust. Appellant denied the latter statement, and testified that she told appellee she had forgotten she was not to encumber the land; that there was no conversation between them to the effect that she held the land in trust only, or that she had forgotten that fact. Ap-

pellee is personally interested in the result of this suit, as a large creditor of the bankrupt defendants'.

Appellee admitted that, when appellant applied to him for a loan, she may have said that she would secure payment thereof upon the land in controversy or another tract, whichever he desired. It is also claimed that appellant, upon a previous occasion, testified that she claimed title under the quitclaim deed. The final conveyance by appellant's mother, fourteen years after she took possession of the land, claiming to be the absolute owner thereof, and occupied, managed, and controlled the same as her own, to some extent, at least, corroborates appellant's claim that she took possession of the land under a gift from her mother. One of the defendants, Fred Wiemer, was born in 1881, but whether before or after the alleged parol gift of the land to appellant does not appear.

It is also contended by counsel for appellee that, at most, the record discloses the promise of Sophia Lambach to give said land to appellant, and that said promise was never executed or carried out until the quitclaim deed was executed, in 1895, and that appellant did not hold possession of said premises as owner, but, at most, under an arrangement by which the deed in question would some time be executed and delivered to her; but in our opinion, the evidence does not sustain this claim. The testimony of appellant relative to the alleged gift, her occupancy and control of the land, payment of taxes, receipt and use of the income as her own during all the years since 1881, together with her claim of ownership, is not disputed by the testimony of any witness. On the other hand, she is corroborated, to some extent at least, by the testimony of her sons.

The case made out by appellant is fully as strong as, if not stronger than, the facts in *Bevington v. Bevington* and *Sires v. Melvin,* supra. The defendant bankrupts testified that they did not know of the contents of the quitclaim

deed until this controversy arose, and that they have never made any claim to said real estate, or any interest therein whatsoever. The evidence is undisputed that appellant claimed, during all the time she was in possession of said real estate, to be the owner thereof, and that same had been given to her by her mother. Such claim constituted a claim of right, set the statute of limitations in operation, and title to said premises became complete in her in ten years thereafter. *Sires v. Melvin,* supra; *Bevington v. Bevington,* supra.

7. DEEDS: conditions and restrictions: validity.

But it is also contended by counsel for appellee that appellant accepted said quitclaim deed and, upon a previous occasion, testified that she claimed title to said premises thereunder. It is elementary, of course, that, if she became vested with the title to said real estate under a parol gift from her mother, or by adverse possession, before the execution of said quitclaim deed naming her as trustee and her children beneficiaries thereof, the grantor was wholly without authority to bind her by any conditions or limitations upon the title. She accepted the deed, evidently, without knowledge that she was named as trustee, and may have been willing that the provision prohibiting her from encumbering said premises be inserted therein, as protection against the importunities of her husband to mortgage same to aid him in live stock speculation. She testified that same was inserted in the deed for that reason. The evidence is wholly insufficient, however, to show that appellant intended to, or, in fact did, waive any right, claim, or interest in and to said real estate with which she had previously become vested by virtue of the gift and adverse possession thereof for more than fourteen years before said deed was executed. The trust provision of said deed was evidently not thought of at the time appellant took possession of said premises under said alleged gift, and, so far as the record discloses,

not until the date on which the instrument was executed. It seems to us that the evidence satisfactorily, if not conclusively, shows that appellant went into possession under a parol gift of said premises to her by her mother, and that she has at all times claimed to be the absolute owner thereof under said gift, which amounted also to a claim of right, and that title in fee to said premises was complete in her before the said quitclaim deed was executed, and that she is the absolute owner thereof; and plaintiff's petition should have been dismissed, and the prayer of appellant's cross-petition asking that title to said premises be quieted in her, should have been sustained, and decree entered in accordance therewith. Other questions discussed by counsel, in view of what is said above, need not be referred to herein.

For the reason above stated, the judgment of the district court is reversed and cause remanded, with directions that a decree be entered in the court below in harmony with this opinion.—*Reversed.*

GAYNOR, C. J., WEAVER and PRESTON, JJ., concur.