ANDERSON, Appellant, *v.* HOFFMAN, Respondent.

(No. 7,334.)

(Submitted February 1, 1935.   Decided February 25, 1935.)

[43 Pac. (2d) 644.]

*Mr. S. J. Rigney,* for Appellant, submitted a brief and argued the cause orally.

*Messrs. Foot, Aronson & Foot,* for Respondent, submitted a brief; *Mr. Eugene B. Foot* argued the cause orally.

MR. JUSTICE MATTHEWS delivered the opinion of the court.

The plaintiff, P. B. Anderson, has appealed from a judgment against him and in favor of C. A. Hoffman, defendant.

The judgment from which the appeal is taken was entered in a claim and delivery action on the commencement of which plaintiff secured possession of fifty-four head of horses of which he claimed to be the owner; it adjudges the return of the horses to the defendant Hoffman, or, if a return cannot be had, the payment of $300 fixed as the value thereof. The facts on which the court, sitting without a jury, rendered the judgment are practically undisputed.

148

On April 7, 1932, one Mary Perrine gave to the plaintiff a bill of sale to sixty head of horses, more or less, "ranging on the Blackfeet Indian Reservation," in satisfaction of a pre-existing debt; she agreed that the horses should continue to range as theretofore until the plaintiff could dispose of them. The bill of sale was not filed in the office of the clerk of Glacier county or elsewhere.

In August, 1932, Mary Perrine, with her husband, filed a voluntary petition in bankruptcy and was adjudged a bankrupt, and the defendant, Hoffman, was appointed trustee in bankruptcy. In October, seemingly at the direction of the First National Bank of Kalispell, the chief creditor in bankruptcy, but as trustee in bankruptcy, defendant gathered the horses in question as assets of the bankrupt. This action followed, and, the plaintiff having secured possession of the horses, the Kalispell bank filed with the sheriff a third-party claim, asserting that it held a mortgage on the horses executed in 1929 and on file in the county clerk's office.

The question as to the correctness of the judgment turns on the validity of the bill of sale from Mary Perrine to the plaintiff as against this defendant. The validity of the bill of sale is to be tested by a determination as to whether the law with respect to delivery and change of possession has been complied with, and, if there has been no sufficient compliance with the law, was the defendant in a position to take advantage of the deficiency?

It is clear from the evidence that at the time of the sale these horses were on that portion of the Indian Reservation classed as "open range, free to anybody"; they were branded "3-Y," presumably Mrs. Perrine's brand. It is further clear that the execution and delivery of the bill of sale constituted the entire transaction between Mrs. Perrine and the plaintiff. While Anderson testified, in answer to a leading question, that he was in possession of the horses at the time they were taken by the defendant, he further testified: "I never rounded them up, * * * I just knew they had some horses out there, and did not pay so awful much attention to

them." The brands were not vented and the bill of sale was not filed for record. At the time of the sale, the horses were on the open range, which was common pasture for everybody; they were in the actual possession of no one, but were in the constructive possession of Mrs. Perrine.

In order to constitute a valid sale, as against creditors of the then owner, it was necessary that there should be a delivery of the constructive possession to the vendee. (*Dodge* v. *Jones,* 7 Mont. 121, 14 Pac. 707.)

As the sale was made prior to May 15, the vendee could have preserved his rights under the bill of sale, without possession in fact, by filing a copy of the bill of sale, with a notice of his claim, in the office of the county clerk of the county in which the horses were running at large (sec. 9297, Rev. Codes 1921), but this he did not do. Had the brands on the horses been vented, the vent would have been prima facie evidence that the animals had been sold to someone (sec. 3300, Id.), and a venting of the brand or a rebranding at the time of sale might have been a sufficient change of the constructive possession (*Cady* v. *Zimmerman,* 20 Mont. 225, 50 Pac. 553), but again no such action was taken.

"Every transfer of personal property * * * is conclusively presumed, if made by a person having at the time the possession or control of the property, and not accompanied by an immediate delivery, and followed by an actual and continued change of possession, * * * to be fraudulent." (Sec. 8604, Id.) This section applies to the sale of livestock on the range (*Ettien* v. *Drum,* 32 Mont. 311, 80 Pac. 369, 370); it declares a conclusive presumption, and, consequently, no allegation or proof of intent to defraud or fraudulent acts is necessary in such a case as this. Regardless of good faith, the transaction is "fraudulent in law." (*In re Ricketts,* (C. C. A.) 234 Fed. 285, 289.)

It is immaterial that no showing was made that Mrs. Perrine was in debt at the time of the sale, for the statute (sec. 8604, above) declares that such a sale is "void, against those who are his creditors *while he remains* in possession, * * *

and against any persons on whom his estate devolves in trust for the benefit of others than himself, and against purchasers or encumbrancers in good faith subsequent to the transfer." (*Brown* v. *O'Neill,* 95 Cal. 262, 30 Pac. 538, 29 Am. St. Rep. 111; *Rohrbough* v. *Johnson,* 107 Cal. 144, 40 Pac. 37.) Mrs. Perrine remained in possession until the horses were taken by the trustee in bankruptcy for the benefit of the bankrupt's creditors.

Under his general denial, the defendant was entitled to show any fact which controverted facts the plaintiff was compelled to prove to establish his cause of action (*Mather* v. *Musselman,* 79 Mont. 566, 257 Pac. 427); he was therefore entitled to show that he took the horses as trustee in bankruptcy. Title to the bankrupt's property—including "property transferred by him in fraud of his creditors"—vests in the trustee. (Sec. 110, Title 11 U. S. C. A.) This latter class of property is not, of course, in the custody of the bankruptcy court, and, as to such property, the trustee "shall be deemed vested with all the rights, remedies, and powers of a judgment creditor holding an execution duly returned unsatisfied." (Sec. 75, Title 11 U. S. C. A. as amended in 1910.)

It is the duty of the trustee to gather the assets; to follow up all leads which will aid in their assembling, including bringing any necessary action to establish that property has been transferred in fraud of creditors. (11 U. S. C. A., sec. 110; *Barber* v. *Wiemer,* 183 Iowa, 72, 165 N. W. 440; *Blumberg Bros. Co.* v. *Odum,* 32 Ga. App. 652, 124 S. E. 547; *In re Kuhn Bros.,* (C. C. A.) 234 Fed. 277; *Chicago Title & Trust Co.* v. *Zuttermeister,* 242 U. S. 629, 37 Sup. Ct. 14, 61 L. Ed. 536.) For this purpose creditors' rights under state laws accrue to the trustee. (*Dean* v. *Shingle,* 198 Cal. 652, 246 Pac. 1049, 46 A. L. R. 1156.) Except in the matter of setting apart to the bankrupt exemptions allowed by law, the trustee is the representative of the creditors, and of them only. (*Aiken* v. *Edrington,* Fed. Cas. No. 111.) Where the trustee's duty is plain, he should act on his own responsibility. (*In re Estate of Franklin Sav. Fund Soc.,* Fed. Cas. No. 5058.)

Under the above amendment of 1910, the trustee may assert claims, avoid preferences, and collect assets, where the bankrupt, if there had been no bankruptcy, could not act (*In re Kessler*, (C. C. A.) 186 Fed. 127, affirmed *Merchants' Nat. Bank* v. *Sexton*, 228 U. S. 634, 33 Sup. Ct. 725, 57 L. Ed. 998), and under the amendment the trustee "represented unsecured creditors with the same * * * effect as if they had, on the date of the filing of the petition, * * * levied executions" on the property. (*Interstate B. & T. Co.* v. *Brown*, (C. C. A.) 235 Fed. 32; certiorari denied, *Commercial T. & S. Bank* v. *Wilson*, 242 U. S. 632, 37 Sup. Ct. 15, 61 L. Ed. 537; *Interstate Banking & T. Co.* v. *Wilson*, 242 U. S. 632, 37 Sup. Ct. 15, 61 L. Ed. 538.)

As it is manifest that, in legal contemplation, the property ▆ here involved was transferred by the bankrupt "in fraud of his creditors," and title thereto vested in the trustee, who stood in the position of a creditor who had already seized it under an execution, his act in peacefully taking possession thereof was lawful and proper.

As the plaintiff and the bankrupt apparently acted in good faith, the law voiding the transaction may seem harsh, but, as stated in the *Ettien Case,* above, "we cannot hold a law inapplicable merely because it works a hardship upon some one."

Finding no reversible error in the record, the judgment must be affirmed.

MR. CHIEF JUSTICE SANDS and ASSOCIATE JUSTICES STEWART, ANDERSON and MORRIS concur.