103 F.2d 237 (1939)
In re GUSTAV SCHAEFER CO.
BOYLE, Co. Treas.,
v.
WELLS.
No. 7708.
Circuit Court of Appeals, Sixth Circuit.
April 13, 1939.
*238 Abraham M. Braun, of Cleveland, Ohio (Frank T. Cullitan, of Cleveland, Ohio, on the brief), for appellant.
H. Walter Stewart and Herbert A. Rosenthal, both of Cleveland, Ohio (Bernard H. Schulist and Thompson, Hine & Flory, all of Cleveland, Ohio, on the brief), for appellee.
Before SIMONS, ALLEN, and HAMILTON, Circuit Judges.
HAMILTON, Circuit Judge.
This is an appeal from a decree of the District Court denying petition to review an order of the Referee in Bankruptcy.
The bankrupt, a corporation, was for many years engaged in the business of manufacturing and repairing auto, truck and bus bodies and special tractor equipment in two plants in Cleveland, Ohio, until it went into bankruptcy in 1935.
For the years 1932, 1933, 1934 and 1935, it filed with the Auditor of Cuyahoga County returns of personal property for the assessment of taxes in which it valued its inventory, machinery and equipment at cost, as shown by its books, less an annual depreciation charge of ten per cent on the latter.
On the basis of these returns the Tax Commission made an assessment for each of the years as follows: 1932, $2,596.61; 1933, $2,074.69; 1934, $1,774.86, and 1935, $1,735.70 which is conceded to be the correct sum due upon the basis of the returns. The bankrupt paid on the 1932 assessment, $1,253.04.
The Treasurer of Cuyahoga County filed with the Referee claim for taxes in the foregoing amounts for each of the years and the Trustee in Bankruptcy filed his objections in the form of an application for a show cause order upon the Treasurer as to why his claim should not be rejected, expunged or reduced on the ground that the assessment and valuation for each of the years was excessive and that the bankrupt, during the taxing periods, had no taxable interest. At a hearing on the show cause order, Henry G. Schaefer, former Vice President and General *239 Manager of the bankrupt who signed and swore to the returns for the years 1932 and 1935 and knew the contents in the other years, testified that he was familiar with the nature, character and content of the inventory, machinery and equipment of the bankrupt for the years in question and was an expert on values of lumber and machinery.
He stated that in December, 1931, under his supervision, an actual inventory was taken of all manufacturing material and manufactured products on hand priced at cost which was used as a basis of valuation for subsequent years, with new purchases at cost added and sales deducted. He stated that hitches and parts carried in the 1931 inventory and subsequently at $10,110.64 were obsolete during all the time and had a true cash value of $600; that lumber inventoried at $49,395.67 had a true value not in excess of $20,000 because it was one purpose wood and sawed for car body building and the change from wood to steel bodies by car manufacturers greatly decreased its value.
In December, 1932, he sold for $8,000 to C. H. Barth from whom the bankrupt had borrowed $10,000, some of the bankrupt's choice lumber which was inventoried at $18,000 in 1931. The same lumber was later sold by Barth in 1934 for $5,000 and until sold was carried on bankrupt's books at the original inventoried value of $18,000. He valued the remaining lumber at $40 per 1,000 board feet or $10,800.
He said the hitches and scrapers in miscellaneous stock inventoried in 1931 at $4,479 had a true value in money for all subsequent years of $500, because their design and construction were specially for Ford tractors which were discontinued, though he stated the bankrupt did some little business and made a few sales in these repair parts in 1932 and 1933. He stated that cabs bought by the bankrupt in 1930 for which it paid from $88.70 to $160 each, greatly deteriorated in value because of the adoption of steel cab bodies by the White Company, its main purchaser; that 50 of these cabs sold for $25 each and he valued the remaining 75 on hand at bankruptcy at $5 each. He stated the Majestic Car Corporation chassis which was inventoried at $2,700 in 1931 was obsolete at that time and for the subsequent years had a value of only $75. He testified the 15 winches on hand in 1931 and inventoried at cost of $6,300, which were used in seven-ton trucks, because of the two-ton truck State limitation, became less valuable and by 1935 were worth only $100 each.
He stated that a trailer truck built at a cost of $4,000 and so listed in the inventory sold in 1933 for $2,000 with $1,000 additional repairs and that the miscellaneous items generally were in the inventory at $9,359.90, their true value. There was taken on all these items bulk depreciation of $25,000 in the year 1932, which was deducted from the inventory.
Machinery and equipment were valued at cost and most of the former was used for a special purpose. Two-thirds of it was destroyed by fire in 1927 and some reconstructed at that time with some new purchases then and additional ones in 1930, 1933 and 1935. All the machinery was set up on the bankrupt's books at cost, plus installation and added safety equipment and depreciation of ten per cent taken on all of it for the years 1932, 1933, 1934 and 1935. This witness stated that in 1932 twenty-five per cent in value of the machinery was obsolete, but carried at purchase price less depreciation. He gave its actual value in 1932 at $16,000 and in 1933 and 1934 at $13,000 with no definite figure in 1935. Upon inquiry as to whether he considered the original inventories as false he said he did not think so but that book values were not a true criterion.
He stated that the same figures were reported by the bankrupt in its income tax return as used in the balance sheets and tax returns filed with the County Auditor. All of the assets of the bankrupt were purchased at the bankruptcy sale in August, 1935, by this witness and his associates for $22,000 including inventory, machinery, equipment and good will.
Walter Rock, an experienced lumber man, testified that in 1932 he carefully inspected the lumber purchased by Mr. Barth from the bankrupt consisting of 123,000 feet, which was worth $40 per thousand board feet, and in his opinion this was the value of the lumber owned by the bankrupt in the years 1932, 1933 and 1934.
William J. Glor, who was an expert in woodwork and metal work machinery and one of three appraisers appointed by the Bankruptcy Court to appraise the assets, said he had thoroughly examined the machinery which was of old type and not motor-driven as used since 1925 and that two-thirds of it was purchased prior to *240 1929 and some second-hand put in during 1934. He said the figure of $81,000 used by the bankrupt as original cost was a "false figure." He stated he knew of an instance where the bankrupt had paid $100 for a piece of machinery which was charged on its books at $2,500. He valued the machinery as of January, 1935, for purposes of liquidation at $13,400, and, assuming the same machinery was there for the previous years, he said it was worth, January, 1934, $13,400; January, 1933, approximately $10,000, and January, 1932, approximately $17,000.
Neither the bankrupt nor the trustee made an attempt to invoke relief under the Ohio Tax Statutes against excessive or illegal assessments and filed no claim or complaint, nor instituted proceedings with the Tax Commission of Ohio or other taxing authorities or the courts of Ohio to protest, challenge or secure a revision of the assessments or taxes.
Counsel for the Treasurer objected to the jurisdiction of the Bankruptcy Court to hear and determine the validity and amount of the tax. At conclusion of the trustee's case, counsel for the Treasurer made a motion for a finding and judgment for the Treasurer which was renewed at conclusion of the entire case.
The Referee, after hearing the evidence, found that the valuations of inventory and machinery upon which each of said tax claims was based were erroneously, arbitrarily, improperly and illegally established and excessive in amount and found that the assessed and true values were as follows:

 Inventory Assessed Values True Values
 1932 $113,975.00 $54,689.34
 1933 91,655.00 47,364.34
 1934 74,454.00 40,647.44
 1935 74,964.00 33,430.54
 Machinery and Assessed True
 Equipment Values Values
 1932 $62,840.00 $16,775.00
 1933 48,946.00 9,540.00
 1934 40,116.00 13,440.00
 1935 34,063.00 13,400.00

The taxes were reduced to the following amounts:

 1932 $1,142.98
 1933 919.92
 1934 870.95
 1935 806.31

The District Court approved and adopted the findings and conclusions of the Referee.
The trustee concedes the sums claimed by appellant are the correct amount of taxes due upon the basis of bankrupt's original returns, but insists that the assessments made by the taxing authorities and the valuations on which based were so grossly excessive as to be unreasonable and not the property's "true value in money" as fixed under Article 12, Section 2 of the Constitution of Ohio.
The taxing statutes of Ohio contain the usual provisions as to the making of returns on blanks furnished by the State Tax Commission with the requirement that the information is confidential.
Section 5385 of the General Code of Ohio provides that persons holding property for the purpose of manufacture shall include in their returns "the average value estimated." This is ascertained according to Section 5386 "by taking the value of all property subject to be listed on the average basis, owned by such manufacturer, on the last business day of each month the manufacturer was engaged in business during the year, adding such monthly values together and dividing the result by the number of months the manufacturer was engaged in such business during the year."
A manufacturer is also required under Section 5399 of the General Code to list all machinery, tools and implements used at its depreciated book value unless the assessor shall find that such value is greater or less than the true value of such property in money, in which event it shall be so assessed.
The statute also provides that if the taxpayer claims the true value in money is less than the depreciated book value, he shall so state in writing attached to his return when filing and the County Auditor shall investigate said claim and make his findings and recommendations which shall be referred to and decided by the State Tax Commission.
The appellant insists that the lower court erred on three grounds: (1) that under the tenth amendment of the Federal Constitution, U.S.C.A., it was without jurisdiction to revise the assessments; (2) that the trustee is estopped from contesting the assessments; (3) that its fact conclusions were clearly erroneous and its *241 valuation method did not conform to the taxing statutes of Ohio.
The jurisdiction of the court depends upon the validity and meaning of Section 64a of the Bankruptcy Act, 11 U.S.C.A. § 104(a). So far as pertinent, this statute provides "The court shall order the trustee to pay all taxes legally due and owing by the bankrupt to the * * * State, county, district * * *. Upon filing the receipts of the proper public officers for such payments the trustee shall be credited with the amounts thereof, and in case any question arises as to the amount or legality of any such tax the same shall be heard and determined by the court."
This provision is found in the Act of July 1, 1898, 30 Stat. 563, and courts have ruled with unanimity that the Bankruptcy Court is not irrevocably bound by an irrebuttable presumption of the validity and correctness of the assessment made by the taxing authorities. The language of the statute is plain that it is the duty of the court to hear and determine whether the value at which the property of the bankrupt was assessed was proper and correct according to the local taxing statutes.
Under Article 1, Section 8 of the Constitution, U.S.C.A., it is wholly within the discretion of the Congress to determine to what extent liens obtained by prior statutory proceedings shall be recognized in the distribution of the assets of a bankrupt. First National Bank v. Staake, 202 U.S. 141, 149, 26 S.Ct. 580, 50 L.Ed. 967. It is unnecessary for us to decide whether the Congress could deprive a State or local subdivision of government of either its common law or statutory lien against a bankrupt for taxes.
The enactment of the statute in question did not invade the reserved rights of the States or the exercise of a power not delegated to the United States. The Bankruptcy Court must determine the amount and legality of the taxes due according to the statutory law of the States which have priority in payment.
The economic justification of the statute and its validity is fully set out and sustained in the following cases: Whitney v. Dresser, 200 U.S. 532, 536, 26 S.Ct. 316, 50 L.Ed. 584; New Jersey v. Anderson, 203 U.S. 483, 495, 27 S.Ct. 137, 51 L.Ed. 284; Van Huffel v. Harkelrode, Treas., 284 U.S. 225, 231, 52 S.Ct. 115, 76 L.Ed. 256, 78 A.L.R. 453; Truman v. Thalheimer, 9 Cir., 19 F.2d 468; In re De Angeles, 10 Cir., 36 F.2d 218; Henderson County v. Wilkins, 4 Cir., 43 F.2d 670; In re Clayton Magazines, 2 Cir., 77 F.2d 852; City of Springfield v. Hotel Charles Co., 1 Cir., 84 F.2d 589; Dickinson v. Riley, 8 Cir., 86 F.2d 385; Board of Directors St. Francis Levee Dist. v. Kurn, 8 Cir., 91 F.2d 118; In re Lang Body Co., 6 Cir., 92 F. 2d 338.
There was no privity between the trustee and the bankrupt. The former acquired title to the property by operation of law and the doctrine of estoppel is inapplicable.
Under Section 70a, 11 U.S.C.A. § 110(a), the trustee acquires the title of the bankrupt to all of his property and possessions at the date the petition is filed, subject to valid claims, liens and equities enforceable against the bankrupt. Under Section 47a, as amended, 11 U.S.C.A. § 75 (a), in determining conflict of title between the trustee and third parties, his rights are to be determined as if he were a creditor holding a lien by legal or equitable proceedings at the time the petition was filed. The trustee represents the general creditors and in this capacity may assert claims, avoid preferences and collect assets where the bankrupt, if bankruptcy had not intervened, would be estopped. In re Kessler, 2 Cir., 186 F. 127; Merchants' Nat. Bank v. Sexton, 228 U.S. 634, 645, 33 S.Ct. 725, 57 L.Ed. 998.
The point is made by the appellant that the action of the Referee, approved by the lower court, was not justified by the evidence. The life blood of governments is the prompt payment of taxes and the Bankruptcy Court, in applying section 64a, should not overturn the findings of the duly constituted taxing authorities except on clear and convincing evidence. The Bankruptcy Court should not become a haven for tax dodgers.
"True value in money" at any particular time is a fact which must be determined from the application of experienced and intelligent judgment to a great many other facts. Frequently its determination is relatively simple because of the clarity and convincing nature of the other facts produced. However, simplicity is not always present, depending primarily on the *242 quantum and quality of relevant facts. The valuation of property is an inexact science and whatever method is used will be only an approximation and variance of opinion by two individuals does not establish a mistake in either. If the proof here furnished no better basis for an approximation than the taxing authorities of Ohio used, the finding of the lower court should be set aside.
No fixed rule can be laid down for determining the weight to be given a finding of fact by a bankruptcy referee, but depends on its character. If it be a deduction from established facts as is in the case here, it is entitled to but little weight as the judge, with the same facts, may as well draw inferences or deductions as the referee but where the referee's finding is based upon conflicting evidence involving questions of credibility and he has heard the witnesses, much greater weight attaches to his conclusions and in the latter case, his findings will not be disturbed unless there is cogent evidence of a mistake and miscarriage of justice. Ohio Valley Bank Co. v. Mack, 6 Cir., 163 F. 155, 24 L.R.A.,N.S., 184; In re Lang Body Company, supra. The weight to be given opinion evidence of valuations depends upon its origin and the thoroughness with which it is supported by experience and facts.
The testimony of the witness, Henry G. Schaefer, who swore to the bankrupt's tax returns in 1932 and 1935 and supervised their making in 1933 and 1934 must be rejected because his testimony here contradicts the statements of value he made in the returns. A witness who, under one oath, knowingly affirms a proposition and under another negates it, is not to be credited in either instance, the one statement neutralizing the other. Southern Railway Co. v. Gray, 241 U.S. 333, 339, 36 S.Ct. 558, 60 L.Ed. 1030. Courts should be cautious and reluctant in giving credence to a change in unexplained sworn statements made by a leading witness which serve to temper or adjust a tax valuation long after it has been properly determined by duly constituted administrative officers, and local units of government have fixed their budgets.
Schaefer undertakes to reconcile his conflicting statements by saying that the inventories prepared by him or under his supervision were based on book value which was not the true criterion. However, he testified that he took an actual inventory in December, 1931, at which time he valued at substantial sums the items which he now claims were then worthless. He also testified that at the time the lumber was inventoried he believed it would appreciate in value. He caused the inventory to be arbitrarily written down in 1932. The machinery was replaced and rebuilt after the fire in 1927 and new purchases made in 1930, 1933 and 1935. Schaefer failed to take advantage of Section 5399 of the General Code to obtain a reduction to true, rather than book, value in the tax returns sworn to by him. It is a fair presumption he then believed the depreciated book value of the machinery represented its true value. He states nothing which serves as a satisfactory explanation of his former assertions of value which he now denies. The opinion of other witnesses as to value is far from conclusive, has no substantial probative weight and is not sufficient to overcome the weighty presumption of correctness of the assessments made by the taxing officials of Ohio.
If Schaefer's testimony were accepted unreservedly there would be no evidence on which we could value the inventories pursuant to Sections 5385, 5386 of the General Code of Ohio because there is no evidence on which to base average monthly inventories as required thereunder.
In applying Section 64a of the Bankruptcy Act, the court must adhere strictly to the statutory provisions of the states in determining "taxes legally due."
Upon an appeal in equity or bankruptcy, the appellate court will dispose of the case if the entire record is before it. Elliott v. Toeppner, 187 U.S. 327, 333, 23 S.Ct. 133, 47 L.Ed. 200; Houghton v. Burden, 228 U.S. 161, 172, 33 S.Ct. 491, 57 L.Ed. 780; Courier-Journal Job-Printing Company v. Schaefer-Meyer Brewing Company, 6 Cir., 101 F. 699; Schieber v. Hamre, 8 Cir., 10 F.2d 119. The record here is complete and we may make final disposition rather than remand for further hearing.
The order of the Referee is modified and corrected and, insofar as it reduces the tax claims of appellant, is set aside and the application of the Trustee for a show cause order is denied. The decree is reversed with directions to enter an order in conformity with this opinion.
*243 SIMONS, Circuit Judge (dissenting).
I am unable to concur in the result. The evidence as reviewed in the opinion clearly demonstrates that the depreciated costs of machinery and inventory as carried on the bankrupt's books did not truly reflect value. It repels the unexpected conclusion and is in no wise contradicted. The presumption of accuracy in the assessment disappears when it becomes apparent that the assessing officers but accepted the return of the bankrupt and made no appraisal of their own as to value. These returns, however they may bind the bankrupt corporation, do not foreclose the trustee, since, as the opinion rightly holds, there is no estoppel. Moreover, the evidence is not merely opinion evidence, but in respect to obsolescence, fire, single purpose material, and actual sales, is factual. It is in important respects corroborated by unimpeached witnesses who were not connected with the bankrupt company. Not only should weight be given to the findings of the referee who saw and heard the witnesses, but the generally accepted rule that concurrent findings of referee and court should not be set aside except for clear demonstration of error, should be applied. I see no reason for setting aside this salutary and self-imposed check upon arbitrary judgments of reviewing courts. We have in the past consistently adhered to it.
The truism that prompt payment of taxes is important to governments requires no demonstration. It has been recognized since governments first were organized. Nor should it be necessary to explain that a bankruptcy trustee is charged with the duty on behalf of creditors to protect the bankrupt estate from unlawful or unreasonable claims, even as against the government, a duty which in his trust capacity and as an arm of the court he is without power to avoid. There is no persuasiveness, therefore, as an aid to decision, in the inescapable and wholly inexplicable implication of the opinion that the trustee's challenge to the taxes is in any respect a resort to the Bankruptcy Court as a haven for tax dodgers, since no one other than the trustee can or does contest the tax. This gratuitous condemnation of the trustee will add little to the zeal of bankruptcy trustees for safeguarding estates against exactions reasonably conceived to be unwarranted.
The order of the District Court, which is what we review, should be affirmed.