**In the Matter of PITT WHOLESALE COMPANY, Inc., Bankrupt.**

No. 23255.

United States District Court
W. D. Pennsylvania.

May 25, 1964.

Harry R. Levy, U. S. Atty., for the Bankrupt.

WILLSON, District Judge.

This case is before the Court on the petition of the United States to review an Order Referee Laffey entered on March 4, 1964, sustaining the Trustee's exception to the allowance of the claim

7. People v. Picciotti, 4 N.Y.2d 340, 175 N.Y.S.2d 32, 151 N.E.2d 191 (1958); People v. De Flumer, 40 Misc.2d 732, 243 N.Y.S.2d 893 (1963).

and amended claim of the Internal Revenue Service of the United States. In the Referee's Certificate he stated the question to be decided is:

"Does the bankrupt corporation owe income taxes to the Internal Revenue Service of the United States for the years 1958 and 1959?"

The Referee answered the question in the negative, and the Government filed a Petition for Review.

An examination of the record before the Referee shows that the case was decided by him after a full and complete hearing as to whether the Trustee had overcome the presumption of correctness accorded the income tax assessments made by the Commissioner. The income tax claim amounts to $30,577.40 for the year 1958, and $26,538.56 for the year 1959. The United States contends that the Referee erred in law in entering his Order because the Trustee has not sustained his burden of proof in rebutting the presumption of the validity of the tax assessments.

On December 22, 1959, a receiver was appointed in a state court proceeding for Pitt Wholesale Company, Inc. Subsequently on February 8, 1960, an involuntary petition in bankruptcy was filed, and it was duly adjudicated bankrupt on February 23, 1960. The corporation filed an income tax return for the year 1958, reflecting a loss of $23,473.66, but filed no return for the year 1959.

The Internal Revenue Service audited books of the corporation during October 1962. In the meantime books and records of the corporation were in the hands first of the state court receiver and then the Receiver and Trustee in Bankruptcy. At the time of the Government audit, the agent contacted a Mr. Mathies, former president of Pitt Wholesale Company, Inc., with regard to the whereabouts of the corporation's books and records and the method of keeping records. Apparently Mr. Mathies was uncooperative, and as the agent was unable to locate adequate books and records, he concluded that such books and records as were made available to him did not reflect the totali-

ty of the transactions of the bankrupt. The auditor then reconstructed income on the basis of the information he had, and after consulting similar types of businesses.

On or about December 8, 1962, the president of the bankrupt was indicted on six counts of wilfully concealing and/or transferring assets of the bankrupt with the intent to violate the bankruptcy laws and of not supplying the receiver with all of the books and records of the bankrupt. He was later convicted on all six counts of the indictment.

In reconstructing the taxpayer's income, the auditor used the percentage markup method. By this method, the auditor made a determination that 25 per cent was the average markup the bankrupt was obtaining for goods, such amount representing a balanced average of the percentage of markup on wholesale and retail sales. By applying such markup to the bankrupt's reported cost of goods sold, he determined the bankrupt's actual volume of sales. The percentage markup utilized was determined by considering comparable businesses in the community and by tracing actual sales made by the bankrupt for which records were available.

The Referee heard the testimony and received a report of one John M. Anderson, a certified public accountant, whom the Trustee had retained to conduct an audit of the books and records belonging to the bankrupt. This witness testified that in the year 1958, the bankrupt filed a tax return which showed a gross profit of $17,612.00 and after deducting operating expenses the return showed a net loss of $102,233.80. This witness testified that the only record missing was a general ledger. He stated that there were records showing the daily transactions. He testified that the records available to him consisted of a cash book, which showed the daily bank deposits, and a list of checks drawn, indicating the check number, the payee, and the amount. He also had copies of deposit slips showing the individual checks deposited. The witness indicated that he was able to

classify the disbursement by referring to the cash books, purchase invoices, and canceled checks. And in connection with the liabilities, he was able to examine the outstanding accounts payable by looking at the unpaid invoices in the files and comparing this list with the claims filed with the receiver.

It is to be observed that according to Webster, "a ledger is the final book of record in business transactions," in which all debits and credits from the journal and other records, are placed under appropriate heads. Generally speaking, in bookkeeping the journal is the daybook. But the source material for the ledger is the detailed records of purchases, sales, deposits, payments, and other records of the daily transactions. These detailed records came into the hands of the state court receiver and afterwards the Trustee in Bankruptcy. In a corporation such as the bankrupt no doubt a ledger should have been made available, and the failure of the corporation to produce such a record in the first instance would permit such an assessment made by the Government. On the other hand, the Referee in his report has carefully reviewed the evidence before him and concluded the presumption as to the correctness as to the income tax assessments has been overcome by the Trustee's evidence. Counsel for the Government have cited many decisions. This Court agrees with counsel that those decisions are authoritative on the facts shown in the individual cases. This is a civil action as were the determinations of the Commissioner in Shahadi v. C. I. R., 3 Cir., 266 F.2d 495, where the Court on page 500, said the determinations of the Commissioner have *prima facie* validity. The Court of Appeals, however, has indicated in In re Monongahela Rye Liquors, 3 Cir., 141 F.2d 864, that the Bankruptcy Court has the power to redetermine tax claims. Also the Court of Appeals of the Sixth Circuit has said in In re Gustav Schaefer Co., 103 F.2d 237, that the Bankruptcy Court is not irrevocably bound by an irrebuttable presumption of validity and correctness of the assessment made by taxing authorities.

The question before this Court is whether it should reweigh the evidence which the Referee heard and come to a different conclusion. The Referee heard and saw both the witnesses, that is, the Internal Revenue Agent and the Certified Public Accountant. I concluded from an examination of his memorandum that the Referee decided that Mr. Anderson made a more thorough and competent examination of the daily records which were available. In this connection it should be pointed out that the Receiver and Trustee had great quantities of records of the corporation which were examined by Mr. Anderson. The agent on the other hand paid little attention to the detailed records, but was looking for a ledger showing a summary of the business which would ordinarily be shown on the ledger, and not finding it available to him, made his assessment. Under these circumstances I think the Court is bound to accept the findings of the Referee. In the Gustav Schaefer case, 103 F.2d 237, 242, the Court said:

> "No fixed rule can be laid down for determining the weight to be given a finding of fact by a bankruptcy referee, but depends on its character. If it be a deduction from established facts as is in the case here, it is entitled to but little weight as the judge, with the same facts, may as well draw inferences or deductions as the referee but where the referee's finding is based upon conflicting evidence involving questions of credibility and he has heard the witnesses, much greater weight attaches to his conclusions and in the latter case, his findings will not be disturbed unless there is cogent evidence of a mistake and miscarriage of justice. Ohio Valley Bank Co. v. Mack, 6 Cir., 163 F. 155, 24 L.R.A.,N.S., 184; In re Lang Body Company, supra [6 Cir., 92 F.2d 338]. The weight to be given opinion evidence of valuations depends upon its origin and the thoroughness

with which it is supported by experience and facts."

 Finally, this Court is bound by the clearly erroneous rule. See General Order 47. The issue presented here is one of fact finding, that is, as to whether the corporation had a taxable income during the years 1958 and 1959. Under the rule, I am required to accept the Referee's Findings of Fact unless clearly erroneous, but under the record presented it is clear that the Referee's Findings are based upon conflicting evidence involving questions of credibility, and he having heard the witnesses, his findings and conclusions are entitled to considerable weight. Under the evidence presented to him as shown in this record, I believe his decision is correct.

### ORDER OF COURT

And now, May 25, 1964, upon due consideration and for the reasons indicated in the foregoing opinion, this Court accepts the findings and conclusions of Referee Laffey in all respects, and his report is adopted and his decision affirmed.